IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NJOLAH KARMO and DEDDEH KARMO | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 14-cv-2797 |
| BOROUGH OF DARBY ET. AL., | : |
| | : |
| Defendants. | : |

**MEMORANDUM**

**JOYNER, J.**                                    **SEPTEMBER 25, 2014**

Before the Court are Defendants Borough of Darby, Darby Borough Police Department, Timothy Ervin, Mark Hudson, Liam McElwee, Robert Smythe, and Robert Zubriski's ("Moving Defendants") Motion to Dismiss (Doc. No. 10), as well as Plaintiffs' Response thereto (Doc. No. 18). Additionally before the Court is Defendant Kevin McAveney's ("Officer McAveney") Motion to Dismiss (Doc. No. 13) and Plaintiffs' Response thereto (Doc. No. 19). For the reasons below, the motions to dismiss are GRANTED in part and DENIED in part. An Order follows.

I.   BACKGROUND

Plaintiffs Njolah Karmo ("Mr. Karmo") and Deddeh Karmo ("Mrs. Karmo") allege the following facts in their Complaint (Doc. No. 1). On or about July 21, 2012, Plaintiff Njolah Karmo was attending a graduation celebration for a friend at a private residence in Darby Borough. Compl. ¶ 15. Defendant police

1

officers Zubriski, Ervin, Hudson, and McElwee were summoned for a noise complaint and approached Mr. Karmo in the backyard. Id. ¶ 16. Mr. Karmo notified the officers that he was not the owner of the home where the celebration was taking place. Id. ¶ 16.  The officers did not permit Mr. Karmo to retrieve the owner of the home and ordered him to provide identification. Id. ¶ 16. Mr. Karmo refused to do so, believing that he had done nothing illegal or improper. Id. ¶ 17.

As a result of this refusal, defendants McAveney, McElwee, Hudson and others pushed Mr. Karmo against the wall of the residence. Id. ¶ 18. Mr. Karmo repeatedly asked "what did I do?" and stated that he was not resisting. Id. Defendant McElwee struck Mr. Karmo several times in the face and stomach. Id. ¶ 19. Defendants McAveney, McElwee, Hudson and other defendants then placed Mr. Karmo in a headlock and violently threw him to the ground, causing numerous injuries. Id. ¶ 21.  Defendants then released Mr. Karmo and left to investigate the party. Id. ¶ 22. Mr. Karmo did not resist arrest at any point during the confrontation. Id. ¶ 20.

As a result of the altercation, Mr. Karmo suffered a concussion, headaches, back pain, confusion, injuries to the abdomen, fractures of the pelvis, swelling over the left cheek and per orbital region, a fracture of his left vertebrae, permanent and temporary disfigurement of his face, and multiple

other injuries including cuts, bruises, and abrasions to his head, face, and body. Id. ¶ 23.

Mr. Karmo went upstairs to the master bedroom and sat on the bed to treat his injuries. Id. ¶ 25. His wife, Deddeh Karmo, joined him to help attend to his injuries. Id. ¶ 26. Defendants McAveney, McElwee, Hudson, Zubriski, Ervin and Burns then entered the master bedroom. Id. ¶ 27. Mr. Karmo raised his hands in the air and asked, "what did I do?" Id. ¶ 27. Defendants McAveney, McElwee, Hudson, Zubriski, Ervin and Burns then grabbed Mr. Karmo and forcefully dragged him outside the bedroom, where they "began to violently assault" him. Id. ¶ 28. They dragged Mr. Karmo to the end of the hallway, away from the stairs and out of sight of the individuals attending the party. Id. ¶ 30. They then repeatedly beat Mr. Karmo about his head and body. Id. ¶ 30. As a result, Mr. Karmo sustained injuries including a concussion, recurring headaches, persistent back pain, fractures of the pelvis, injuries to his abdomen and face, a fracture of the lumbar vertebrae, and cuts, bruises, and abrasions. Id. Mr. Karmo was transported that night to the University of Pennsylvania hospital for treatment of his injuries. Id. ¶ 32.

During the course of this second altercation, defendants McAveney, McElwee, Hudson, Zubriski, Ervin, and Burns also forcefully grabbed Mrs. Karmo and struck her about the head, face and body, causing her to sustain injuries. Id. ¶ 29.

Officers McElwee, Hudson, and Zubriski swore out a criminal complaint against Mr. Karmo, charging him with assault, reckless endangerment, harassment, obstruction of the law, resisting arrest, riot, criminal mischief, disorderly conduct, robbery, theft by unlawful taking, and receiving stolen property. Id. ¶ 33. They swore out a criminal complaint against Mrs. Karmo for assault on the arresting officers, reckless endangerment, harassment, obstruction of the law, resisting arrest, riot, criminal mischief, disorderly conduct, robbery, theft by unlawful taking, and receiving stolen property. Id. ¶ 44. After being released on bail, Mr. Karmo was re-admitted to the hospital for more extensive treatment. Id. ¶ 32.

On March 18, 2013,[1] the majority of charges against Mr. Karmo were dismissed by the presiding judge for lack of prima facie evidence. Id. ¶ 33. On November 30, 2012, the majority of the charges against Mrs. Karmo were dismissed for lack of prima facie evidence. Id. ¶ 44.

Mr. and Mrs. Karmo proceeded to trial by jury on June 27, 2013 before the Honorable James Bradley in the Court of Common Pleas of Delaware County. Id. ¶ 34, 45. As to Mrs. Karmo, the jury entered a not guilty verdict as to the only remaining charge

---

[1] Plaintiffs' Complaint states that "the following charges were dismissed for lack of prima facie evidence on March 18, 2004 before District Leonard Tenaglia [sic]." Compl. ¶ 33. The Court assumes that the date contains a typographical error.

against her, that of "Obstruction Administrative Law/Other Government Function." Id. ¶ 45. All other charges were withdrawn or dismissed prior to trial. Id.  As to Mr. Karmo, the jury entered a verdict of not guilty to the charge of simple assault, and found him guilty of disorderly conduct. Id. ¶ 34. The jury was hung as to the charge of resisting arrest. Id. In post-trial motions, the charge of disorderly conduct was dismissed for insufficient evidence. Id. Mr. Karmo was re-tried on the resisting arrest charge on February 6, 2014 and was found not guilty. Id. ¶ 35.

Plaintiffs filed a Complaint in this Court on May 15, 2014. (Doc. No. 1). Plaintiffs bring suit pursuant to 42 U.S.C. § 1983 under the First, Fourth, Fifth, Eighth, Fourteenth Amendments of the United States Constitution, as well as under Article 1, Sections 5 and 8 of the Pennsylvania Constitution. Plaintiffs also bring claims pursuant to 42 U.S.C. §§ 1985, 1986, and 1988, and state law claims for false imprisonment, assault, and malicious prosecution.

Moving Defendants bring a Motion for Partial Dismissal of Plaintiffs' Complaint, requesting dismissal of Plaintiffs' claims under the First, Fifth, Eighth, and Fourteenth Amendments, Article 1 of the Pennsylvania Constitution, and 42 U.S.C. §§ 1985 and 1986. Defendant McAveney brings a Motion for Partial Dismissal of the same claims, and additionally requests dismissal

5

of the punitive damages claim against him.

## II.   STANDARD OF REVIEW

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "detailed factual allegations," it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Thus "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a claim suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (citation omitted) (second alteration in original) (quoting Twombly, 550 U.S. at 555, 557 (2007)).

"The touchstone of the pleading standard is plausibility." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013)(quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262, n.27 (3d Cir. 2010)). A court determining the sufficiency of a complaint should take note of the elements a plaintiff must plead to state a claim, identify

6

the conclusions that are not entitled to the assumption of truth, and "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013)(quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011)).

**III. ANALYSIS**

Moving Defendants ask the Court to dismiss Plaintiffs' Claims against Darby Borough Police Department and Police Chief Robert Smythe, as well as claims brought under the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, the Pennsylvania Constitution, and 42 U.S.C. § 1985 and § 1986. Officer McAveney asks the Court to dismiss claims against him brought pursuant to the First, Fifth, and Eighth Amendments to the U.S. Constitution, the Pennsylvania Constitution, claims under 42 U.S.C. § 1985 and § 1986, and also requests a dismissal of the punitive damages claim.

**A. Withdrawn Claims**

Subsequent to the filing of the Motions to Dismiss, Plaintiffs in their responses (Doc. Nos. 18 & 19) have conceded (1) that the Darby Borough Police Department is not a proper party to this case, Doc. No. 18 at 1, 5; (2) that they have no claims under the Fifth Amendment, id. at 1;(3) that they have no

claims under the Eighth Amendment, id. at 2; and (4) that they have no claims under the Fourteenth Amendment's Due Process Clause, id.  As a result of these concessions, these claims are dismissed.

**B. First Amendment to the U.S. Constitution**

The First Amendment "protects an individual's rights to the free exercise of religion, free speech, and to peaceably assemble and petition for a redress of grievances." Douris v. Dougherty, 192 F. Supp. 2d 358, 364 (E.D. Pa. 2002).  As a corollary, the Amendment "prohibits government officials from subjecting an individual to retaliatory actions" for exercising these protected rights. Hartman v. Moore, 547 U.S. 250, 256 (2006).  To properly plead a claim for such retaliation, a plaintiff must allege "'(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" George v. Rehiel, 738 F.3d 562, 585 (3d Cir. 2013) (quoting Eichenlaub v. Twp. of Ind., 385 F.3d 274, 282 (3d Cir. 2004)). In regards to the second requirement, the plaintiff must allege facts showing that "'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)).

The law is clear that "the First Amendment protects a

significant amount of verbal criticism and challenge directed at police officers." City of Hous., Tex. v. Hill, 482 U.S. 451, 461 (1987). Similarly, "one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer." Norwell v. City of Cincinnati, Ohio, 414 U.S. 14, 16 (1973) (per curiam). Such a penalty would operate to unlawfully "punish ... constitutionally protected speech." Id. at 14.

Plaintiffs allege that defendants Zubriski, Ervin, Hudson, and McElwee "approached Mr. Karmo in the backyard and assumed that [he] was the homeowner. Mr. Karmo immediately and continually denied being the homeowner and offered to get the homeowner for the police." Compl. ¶ 16. When ordered to provide identification, Mr. Karmo refused, believing that he had "no legal obligation to do so due to the fact that he had done nothing improper or illegal." Id. ¶ 17. Plaintiffs allege that Mr. Karmo was detained and assaulted by the officers "as a result of [his] lawful refusal to produce identification." Id. ¶ 18.

The Plaintiffs allegations are sufficient to plead a violation of Mr. Karmo's First Amendment rights. His refusal to produce identification was a nonprovocative challenge to the officers that is protected by the First Amendment. The alleged retaliatory actions - detention, assault, arrest, and prosecution - are clearly "'sufficient to deter a person of ordinary firmness

9

from exercising his First Amendment rights.'" Thomas, 463 F.3d at 296 (quoting McKee, 436 F.3d at 170). And finally, the Plaintiffs have alleged that the retaliatory conduct was taken in response to Mr. Karmo's exercise of his First Amendment rights. The Court will not dismiss the Plaintiffs' First Amendment claims.

**C. Fourteenth Amendment to the U.S. Constitution**

As noted above, the plaintiffs have conceded that they have no proper claim for a Fourteenth Amendment due process violation. Plaintiffs do insist however that they have a claim under the Fourteenth Amendment's Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Put simply, "[t]o prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003).

The Plaintiffs' complaint does not contain a single allegation of differential treatment, let alone any facts to support such an allegation. In their responses to the Motions to Dismiss Plaintiffs claim only that "Plaintiffs were treated differently from those similarly situated on account of their

10

inclusion the [sic] protected class of minorities and the identifiable class of immigrants." Doc. No. 19 at ¶ 4. And also that "[f]urther discovery is required to show the extent of this differential treatment." Id.; see also Doc. No. 18 at ¶ 7. As noted above however, plaintiffs must allege specific facts in order for a claim to survive a motion to dismiss. See Iqbal, 556 U.S. at 678. The unadorned accusations in the Plaintiffs' responses are not sufficient to meet this standard, and their equal protection claim must be dismissed.

**D. Pennsylvania Constitution**

Plaintiffs may not bring a private claim for damages under the Pennsylvania Constitution. Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 Fed. Appx. 681, 687 (3d Cir. 2011). The Third Circuit has explained that "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Id. (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. 2006)). Thus, Plaintiffs' claim for violations of the Pennsylvania Constitution must be dismissed.

**E. 42 U.S.C. §§ 1985, 1986**

To state a claim under § 1985(3), a plaintiff must allege "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)). Because § 1985(3) "was not intended to ... be a 'general federal tort law' ... a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Id. at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)).

Plaintiffs have not alleged any facts going to Defendants' motivations for their actions, or any facts leading to a reasonable inference that Defendants were acting out of any class-based or discriminatory animus. Thus, Plaintiffs' claims under § 1985(3) must be dismissed.

Additionally, a cause of action cannot be maintained under § 1986 "unless a cause of action has been established under section 1985." Robison v. Canterbury Vill., Inc., 848 F.2d 424, 431 n.10 (3d Cir. 1988). As a result, Plaintiffs' claims under § 1986 must also be dismissed.

**F. Claims Against Darby Borough**

A local entity like Darby Borough may only be held liable for the violation of constitutional rights as a result of an

official policy or custom. Simmons v. City of Phila., 947 F.2d 1042, 1059 (3d Cir. 1991)(citing Monell v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978)). A "policy" for this purpose is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" Id. (alteration in original)(quoting Monell, 436 U.S. at 690). A municipal custom, on the other hand, "lacks the formal approval of a policy," but consists of "'such practices of state officials ... [as are] so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. (alterations in original) (quoting Monell, 436 U.S. at 691) (internal quotation marks omitted).  In other words, a plaintiff must establish that the municipal defendant violated her due process rights "either from a decision officially adopted and promulgated or from a permanent and well-settled practice." Id.

The key concern in this inquiry is whether "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the

actions of its employee." Id. at 405. In order to protect municipalities from such *respondeat superior* liability, the plaintiff must not only "identify a custom or policy, and specify what exactly that custom or policy was," but also "allege conduct by a municipal decisionmaker." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009).

Under certain circumstances, a plaintiff can state a claim against a municipality for its "decision not to train certain employees about their legal duty to avoid violating citizens' rights [which] may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). But importantly, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. In order to make such a "failure to train" claim, the plaintiff must allege "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (alteration in original) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. at 1360 (alteration in original) (quoting Bryan Cnty., 520 U.S. at 410) (internal quotation marks omitted).

"A pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Bryan Cnty., 520 U.S. at 409). Though "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary." Id. at 1361 (quoting Bryan Cnty., 520 U.S. at 409). In such a case, the plaintiff must show that the municipality ignored "an obvious need for some form of training," the absence of which would make a constitutional violation "'highly predictable.'" Id. (quoting Bryan Cnty., at 409).

Plaintiffs allege that "[a]cting under color of law and pursuant to official policy or custom, Defendants and Borough of Darby knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiffs' rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant police officers in their duties to refrain from" a number of enumerated actions. Compl. ¶ 70. They also state that Defendants and Darby Borough "had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed ... [and] had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence and knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's

rights or refused to do so." Id. ¶ 71.

What the Complaint fails to identify however is any actual custom or policy related to the alleged violations. Simply stating that the defendant police officers were acting "pursuant to official policy or custom," Id. ¶ 70, is not sufficient to state a claim for municipal liability. As noted above, to survive a motion to dismiss the plaintiff must instead "identify a custom or policy, and specify what exactly that custom or policy was." McTernan, 564 F.3d at 658.

Equally fatal is the complaint's failure to identify a "municipal decisionmaker" to whom the alleged constitutional violations could reasonably be ascribed. Even if the Court assumes that Police Chief Smythe is such a decisionmaker, the plaintiffs present no facts that point to his awareness of, or issuance of, directives having to do with the alleged Constitutional violations.

Further, Plaintiffs have not stated a claim based on a "failure to train" theory. As an initial matter, the Plaintiffs do not allege any pattern of constitutional violations similar to those allegedly suffered by the plaintiffs. See Connick, 131 S. Ct. at 1360. Nor have the plaintiffs alleged sufficient facts to support "single incident" liability: they have provided no facts showing that Darby Borough's "failure to train was clearly going to lead to the constitutional violations alleged." Kean v. Henry,

16

Civ. A. 09-567, 2012 WL 646053 at *7 (E.D. Pa. Feb. 28, 2012), aff'd 523 Fed. Appx. 879 (3d Cir. 2013). Beyond using the proper legal terminology of "deliberate indifference" and "failure to instruct," Compl. ¶ 70, the Complaint simply does not contain the factual assertions required to state a claim.

**G. Claims Against the Defendants in their Official Capacities**

Plaintiffs have brought suit against all defendants (save for the Borough) in both their individual and official capacities. A suit against a public official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989); see also Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell, 436 U.S. at 690). Thus Plaintiffs' claims against defendants in their official capacities are entirely duplicative of the claims against Darby Borough, and are dismissed. See, e.g., Hills v. Borough of Colwyn, 978 F. Supp. 2d 469, 477 n.9 (E.D. Pa. 2013).

**H. Claims against Police Chief Robert Smythe**

A theory of *respondeat superior* liability cannot serve as the basis of a claim for constitutional violations by government officials. Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d

Cir. 2010)(citing Iqbal, 556 U.S. at 676). A plaintiff seeking to hold a police chief personally liable on a theory of supervisory liability must plead (1) that the supervisor participated in violating the plaintiff's rights; (2) that he "directed others to violate her rights" and that his subordinates did in fact violate those rights; or (3) that he "had knowledge of and acquiesced in his subordinates' violations." Id. at 129-30. (citing A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

If proceeding under the theory that the supervisor directed others to violate protected rights, a plaintiff must allege "a causal connection between the supervisor's direction and that violation or, in other words, proximate causation." Id. at 130. "Proximate causation is established where the supervisor gave directions that the supervisor 'knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.'" Id. (quoting Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988)).

Plaintiffs allege that "Defendant, Robert Smythe, was Chief of Police for defendant Borough of Darby at all times relevant to this Complaint." (Compl. ¶ 4). The complaint contains no factual allegations as to Police Chief Smythe other than this sentence. As a result, the Court cannot reasonably draw the inference that Police Chief Smythe directed the actions of his subordinates or

personally took part in them, much less that he should have known that his directions would cause his subordinates to deprive the plaintiffs of their constitutional rights or that he knew of the violations and acquiesced in their occurrence. Additionally, the Plaintiffs' responses make it clear that they in fact have no allegations against Chief Smythe personally, but are rather trying to hold him liable for the actions of his subordinates. See Doc. No. 18 at 9-10. As such, Plaintiff has not stated a claim against Police Chief Robert Smythe.

**I. Punitive Damages**

A plaintiff seeking punitive damages under 42 U.S.C. § 1983 must prove that a defendant's conduct "demonstrates a reckless or callous disregard of, or indifference to, the rights or safety of others." Savarese v. Agris, 883 F.2d 1194, 1203 (3d Cir. 1989)(citing Smith v. Wade, 461 U.S. 30, 56 (1983)). "Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Id. at 1204.

Officer Kevin McAveney argues that Plaintiffs have failed to plead evidence of "malicious conduct" sufficient to support a punitive damages award against him. Doc. No. 13 at 7. Plaintiffs have alleged that Officer McAveney, along with other officers involved in the incident of July 21, 2012, pushed Mr. Karmo against a wall, Compl. ¶ 18, and violently struck and assaulted

him, id. ¶ 21, causing serious injuries including a fracture of the pelvis and lumbar vertebrae and permanent disfigurement of his face. Id. ¶ 23. Plaintiffs also allege that Officer McAveney, along with other officers, further beat Mr. Karmo later that evening, causing more injuries. Id. ¶ 30. Defendants also allegedly struck Mrs. Karmo and injured her head, face, and body. Id. ¶ 29. Taking these allegations as true, Iqbal, 556 U.S. at 678, they are sufficient to infer that Officer McAveney acted with a reckless or callous disregard for the safety of the plaintiffs. Contrary to Officer McAveney's assertions, Plaintiffs do not have to allege malice or evil motive. The Court will not dismiss Plaintiffs' claim for punitive damages.

**IV. CONCLUSION**

For the foregoing reasons, the Motions to Dismiss are GRANTED in part, and DENIED in part.

Plaintiffs' claims under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. §§ 1985 and 1986, and the Pennsylvania Constitution, as well as claims against the Darby Borough Police Department, Darby Borough, Police Chief Robert Smythe, and the defendants in their official capacities are DISMISSED.

Plaintiffs' claims under the First Amendment to the U.S. Constitution, claims for punitive damages, and the claims that the defendants have not challenged may proceed.